UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HENRY HUGH HARRIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-3890** |
| **CITY OF HAMMOND, ET AL** | **SECTION "N"** |

### ORDER & REASONS

Before the Court is the Motion to Dismiss Defendants "Louisiana Attorney General's Internet Crimes Against Children Task Force" and Attorney General Charles C. Foti, Jr. (Rec. Doc. 22). This motion, which was opposed, was submitted on the briefs without oral argument. After considering the record, the memoranda of the parties, and the applicable law, the Court rules as set forth herein.

**I.    BACKGROUND**

On August 4, 2006, Plaintiff Henry Hugh Harris ("Harris") was arrested by members of the Hammond Police Department.[1]  (Rec. Doc. 1, ¶¶1, 3).  Harris claims he was told that he was being arrested by a joint task force formed by the Louisiana Attorney General's office, the Tangipahoa Sheriff's Office, and the Hammond City Police.  (Rec. Doc. 1, ¶ 3).  Harris sued

---

[1] While the movants assert that Harris was arrested for computer aided solicitation of a minor female who described herself as being 15 years old (Rec. Doc. 22-2, p. 1), Harris claims that he was arrested for "verbal communication over a telephone." (Rec. Doc. 23, pp. 1-2).

several individuals and entities including former Louisiana State Attorney General Charles Foti, Jr.[2] and the "Louisiana Attorney General's Internet Crimes Against Children Task Force" ("ICAC Task Force"). (Rec. Doc. 1; Rec. Doc. 30). Harris makes several claims relating to his arrest. (Rec. Doc. 1).

In the instant motion to dismiss[3], former Attorney General Charles Foti, Jr. and the ICAC Task Force (hereinafter collectively, "the Defendants") assert that the claims alleged against them under 42 U.S.C. §1983 and under state law should be dismissed.

## II.　LAW & ANALYSIS

### A.　Standard of Review

The same standard of review applies to motions to dismiss under Rule 12(b)(1) and motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 351

---

[2]　James D. "Buddy" Caldwell was sworn in as Attorney General on Monday, January 21, 2008 and is, thus, the current Attorney General.

[3]　The Court notes that although Defendants' motion is styled as a motion to dismiss, both the motion and the opposition contain and reference exhibits attached thereto. Both parties refer the Court to these exhibits for consideration in making a determination on the instant motion. A court should only consider the pleadings when deciding a 12(b)(6) motion to dismiss. See Fed.R.Civ.P. 12(b). When a court considers matters outside of the pleadings, Rule 12(b) generally requires the court to "treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56." *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972). See also Fed. R.Civ. P. 12(b). However, under a narrow exception to this rule, a court is allowed to consider exhibits attached to a defendant's motion to dismiss without converting that motion into one of summary judgment. See *Sheppard v. Texas Dept. of Transp.*, 158 F.R.D. 592, 595-96 (E.D.Tex.1994). This exception is an extension of the concept set forth in Rule 10(c), which allows exhibits attached to a complaint to be considered as part of the pleadings. *Id.* Under this exception, a court can consider the attached exhibits if (1) they are referenced in the complaint, and (2) they are central to the plaintiff's claim." See *Collins*, 224 F.3d at 498-99.

　Here, because the Court has looked only at the pleadings themselves in making the determination on this motion and has not considered the extrinsic evidence attached to the motion or the opposition, there is no need to convert the instant motion to dismiss to a motion for summary judgment.

(5th Cir. 2003). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). In analyzing a 12(b)(1) or 12(b)(6) motion to dismiss, all facts alleged in the complaint are accepted as true and construed in the light most favorable to the plaintiff. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 341 (5th Cir. 2002).

      B.      **Harris' Claims Against the ICAC Task Force**

The Court first addresses whether the ICAC Task Force is a "juridical person" capable of being sued. The "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Under Louisiana law, non-human "juridical persons" can sue and be sued. *See* La. Civ. Code Ann. art. 24 (2008). The Louisiana Supreme Court has adopted the following approach for determining whether a political subdivision is a separate and distinct juridical person:

> The important determination with respect to the juridical status or legal capacity of an entity . . . . is whether the entity can appropriately be regarded as an additional and separate government unit . . . . In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.

*Roberts v. Sewerage & Water Bd. of New Orleans*, 92-2048 (La. 3/21/94), 634 So. 2d 341, 346-47.

Here, Harris refers to the ICAC Task Force as "the Louisiana Attorney General's Internet Crimes Against Children Task Force." (Rec. Doc. 1, Parties (g); ¶25). This seems to imply that, according to Harris, the ICAC Task Force is a division of the Attorney General's office. While there are no cases that deal specifically with whether the ICAC Task Force has the capacity to be

sued, there are several cases relating to intergovernmental drug task forces, which stand for the general proposition that a plaintiff must point to some grant of statutory authority to show that such task forces may be sued. *Thomas-Melton v. Dallas County Sheriff's Dept.*, 39 F.3d 320 (5th Cir. 1994); *Alcala v. Dallas County Sheriff*, 988 F.2d 1210 (5th Cir. 1993)*; Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir.1991); *Brown v. Fifth Judicial Dist. Drug Task Force*, 255 F.3d 475, 476-77 (8th Cir.2001) (multi-city, multi-county, unincorporated, intergovernmental, multi-jurisdictional drug task force cannot be sued as it has no separate legal existence and has not been granted statutory authority to sue or be sued); *Hervey v. Estes*, 65 F.3d 784, 792 (9th Cir.1995) (an intergovernmental task force made up of various local, county, and state agencies with authority to investigate suspected drug operations could not be sued because there was insufficient evidence to show that those entities intended to create a separate legal entity subject to suit); *Eversole v. Steel*, 59 F.3d 710, 716 n. 6 (7th Cir.1995) (drug task force made up of law enforcement officials from four counties and several municipalities was not an official entity); *Maltby v. Winston*, 36 F.3d 548, 560 n. 14 (7th Cir.1994), *cert. denied*, 515 U.S. 1141, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995); *Dillon v. Jefferson County Sheriff's Department*, 973 F. Supp. 626 (E.D. Tex. 1997) (narcotics task force could not be sued because the intergovernmental agreements did not create a separate legal entity capable of suing or being sued); *Jacobs v. Port Neches Police Dep't*, 915 F.Supp. 842, 843 (E.D.Tex.1996) (county sheriff's department and county district attorney's office are not legal entities capable of being sued in absence of an express grant of jural authority).

Here, Harris has cited no law and has not asserted that any law grants the ICAC Task Force the legal capacity to function independently, and not just as a division of another

governmental entity, like the Attorney General's office. Thus, the Court concludes that the ICAC Task Force is not a juridical person separate and distinct from the Attorney General's Office that can sue or be sued.[4] Therefore, Defendants' motion to dismiss Harris' claims against the Louisiana Attorney General's Internet Crimes Against Children Task Force is granted.

### C.    Harris' Section 1983 Claims against the Attorney General, in His Official Capacity, for Monetary Relief

The Attorney General, as a state actor in his official capacity, is not a person for purposes of suit under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). In addition, suit against the Attorney General in his official capacity is prohibited by the Eleventh Amendment. The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State School v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir.1986). A state may expressly waive this Eleventh Amendment sovereign immunity. See *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. State Dept. of Highways and Public Transp.*, 780 F.2d 1268, 1271-73 (5th Cir.1986). Here, the State of Louisiana has not done so. To the contrary, La.Rev.Stat. Ann. § 13:5106(a) provides that "no suit against the state ... shall be instituted in any court other than a Louisiana state court." The Attorney General, in his official capacity, stands in the place of the State itself and enjoys Eleventh Amendment immunity. *Muhammad v. Louisiana*, 2000 WL 1568210 (E.D.La. Oct. 18, 2000). Therefore, Harris' suit against the Attorney General in an official capacity is barred by the Eleventh Amendment. The

---

[4]     This holding is consistent with the general rule that law enforcement agencies are not separate governmental entities that can be sued. See *Alcala*, 988 F.2d 1210, *1; *Darby*, 939 F.2d at 313-14.

Defendants' motion is granted to the extent that Harris' claims against the Attorney General, in his official capacity, for monetary relief are dismissed.

### D. Harris' Claims for Prospective Injunctive Relief

Harris requests injunctive relief against the Attorney General from "future harassments and defamations" and to "immediately conduct retraining" within the ICAC Task Force with "respect to the constitutional protections provided to citizens." (Rec. Doc. 1, Demand, ¶ B(1)-(2)). While not specified by the Harris in his demand, Harris states in his First Supplemental and Amended Complaint (Rec. Doc. 30, ¶II) that the Attorney is sued "individually and in his official capacity." This Court can only assume that Harris has made or has attempted to make allegations against the Attorney General for injunctive relief in *both* capacities. However, in the instant motion, Defendants only address Harris' claims for injunctive relief against the Attorney General in his *official* capacity. Thus, to the extent that Harris has made allegations for injunctive relief against the Attorney General in his *individual* capacity, those claims are not subject to this motion and shall remain pending at this time. The Court will address Harris' claims for injunctive relief against the Attorney general in his *official* capacity.

The Eleventh Amendment immunity, discussed above, does not cover Harris' claims insofar as they request prospective injunctive relief. See *Edelman*, 415 U.S. at 664 (recognizing the Eleventh Amendment distinction between retrospective and prospective relief); see also *U.S. v. Tex. Tech Univ.*, 171 F.3d 279, 294 n. 24 (5th Cir.1999) (citizens may, generally, pursue prospective injunctive relief against state officials"). Under the *Ex parte Young* doctrine, a private party may sue individual state officials in federal court for prospective relief to enjoin on-going violations of federal law. See *Ex parte Young*, 209 U.S. 123, 158-59 (1908). 36 C.J.S.

*Federal Courts* § 132 (2008). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (citations omitted). Here, Harris' lawsuit asks the Court to enter an injunction ordering the cessation of future harassments and defamation by the Attorney General. (Rec. Doc. 1, Demand, ¶(B)(1)). It also seeks an order from this Court instructing the Attorney General to "immediately conduct retraining" within the ICAC Task Force with "respect to the constitutional protections provided to citizens." (Rec. Doc. 1, Demand, ¶ B(2)). The Court finds that these requests constitute requests for prospective injunctive relief and are not shielded by the Eleventh Amendment. See *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 307-08 (5th Cir.2001). Defendants recognize this as well; however, they assert that Harris' claims for prospective injunctive relief fail and should be dismissed.

The Court notes, however, that Defendants fail to cite any similar cases wherein claims for prospective injunctive relief have been dismissed. (See Rec. Doc. 22-2, p. 9). *On the showing made* in the instant motion, the Court concludes that Harris' claims for prospective injunctive relief relative to defamation and harassment, and to retraining should not be dismissed at this time. While the Court is not concluding that such claims have merit, the Court will not endeavor to make Defendants' case for them. Thus, this motion is denied to the extent that these claims will not be dismissed at this time.

Last, to the extent that Harris seeks injunctive relief under state law claims, as stated above, the *Ex parte Young* doctrine only allows suit for injunctive relief for on-going violations

of *federal law*. *Ex parte Young*, 209 U.S. at 158-59.  Moreover, as discussed above, the Attorney General, in his official capacity, is entitled to sovereign immunity from suit in federal court based on state law claims.  Accordingly, Defendants' motion to dismiss Harris' state law claims seeking injunctive relief from the Attorney General, in his official capacity, is granted.

> **E.    Harris' Section 1983 Claims against the Attorney General, in His Individual Capacity, for Monetary Relief**

Harris alleges that the Attorney General is personally and/or individually liable under section 1983.  The Attorney General, on the other hand, asserts qualified immunity from suit in his personal/individual capacity.  "Qualified immunity serves to terminate a claim against a public official as soon as possible in a judicial proceeding, even before discovery."  *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  The qualified immunity defense counteracts the "deterrent effect that civil liability may have on the willingness of public officials to fully discharge their professional duties."  *Hare*, 135 F.3d at 325.  Furthermore, qualified immunity "weed[s] out claims which fail the [qualified immunity] test without requiring a defendant [public official] . . . to engage in expensive and time consuming preparation to defend the suit on its merits."  *Siegert*, 500 U.S. at 232.  To determine whether an official is entitled to qualified immunity, the Court must determine:  (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.  *Jacobs v. West Feliciana Sheriff's Department*, 228 F.3d 388, 393 (5th Cir. 2000) (citing *Hare*, 135 F.3d at 325..

First, the Court must determine if Harris has alleged a violation of a clearly established constitutional right.  This first prong of the qualified immunity test is a "purely legal question."

*See Siegert*, 500 U.S. at 232.  The Court uses "currently applicable constitutional standards to make this assessment."  *Hare*, 135 F.3d at 326.  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Second, the Court must determine if the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.  This second prong of the qualified immunity test "is better understood as two separate inquiries:  whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendant [] was objectively unreasonable in light of that then clearly established law."  *Hare*, 135 F.3d at 326 (emphasis in original omitted).  The objective reasonableness of an official's conduct is measured with reference to the law as it existed at the time of the conduct in question.  *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994).  "If, upon viewing the evidence in the light most favorable to the non-movant, reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity."  *Id.*  The Court will now separately address and analyze Harris' specific claims relative to defamation and failure to train.

    **1.**    **Defamation**

Harris alleges as follows:

> The Chief of the Hammond City Police Department, as well as Attorney General Foti, even went before the television cameras and castigated the accused while congratulating the defendant officers, individually and jointly demonstrating their explicit approval of such conduct as the officers perpetrated. Attorney General Foti went so far, in an interview related to one such sting operation, as to state he wanted "the damn guys

9

> in prison," referring to all persons arrested by the ICAC Task Force,
> without distinguishing that some may have been wrongfully arrested.

(Rec. Doc. 1, ¶26). Injury to reputation, standing alone, is not enough to demonstrate deprivation of a liberty interest. *Paul v. Davis*, 424 U.S. 693, 712 (1976). "Defamation, by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation." *Siegert*, 500 U.S. at 233. Even if the plaintiff alleges a "serious impairment of his future employment opportunities," that is not enough to establish a constitutional deprivation. *Id.* at 234. Thus, Harris's defamation claim against Attorney General Foti, in his personal capacity, does not establish the deprivation of a constitutional right. Plaintiff's defamation claim fails the first prong of the qualified immunity test. Accordingly, his defamation claim against the Attorney General, in his individual capacity, does not overcome the Attorney General's qualified immunity. Defendants' motion to dismiss this claim is granted.

### 2.      Failure to Train/Failure to Supervise

Harris alleges:

> Attorney General Foti, through State statute, was provided with
> policy-making authority for regulating the conduct of the ICAC Task
> Force officers and their supervisors, and he was thus the maker of policies
> regarding a lack of training and supervision in accordance with which the
> conduct described caused injury to the Plaintiff.

(Rec. Doc. 1, ¶36). "Supervisory officials cannot be held liable under [42 U.S.C. § 1983] for the actions of subordinates . . . on any theory of vicarious or respondeat superior liability." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted). Absent a supervisor's "overt personal participation" in events giving rise to alleged constitutional violations, a plaintiff alleging section 1983 claims must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link

exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa v. Prejean*, 2008 WL 4319977 (5th Cir. Sept. 23, 2008) (citing *Estate of Davis*, 406 F.3d at 381 (internal quotation marks and citation omitted)). Deliberate indifference is a " 'conscious' choice to endanger constitutional rights." *Mesa*, at *8 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir.1998)). "[P]roof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Id.* (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir.2003) (quotation marks omitted)). The Fifth Circuit has explained the following regarding deliberate indifference:

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of training is obvious and obviously likely to result in a constitutional violation. It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, a supervisor might reasonably be found to be deliberately indifferent.

*Estate of Davis ex rel. McCully*, 406 F.3d at 381-82 (citations and internal quotation marks omitted).

Before this Court can adjudicate on the merits of Harris's failure to train or supervise claim, Harris must overcome the bar of the Attorney General's qualified immunity defense. *Id.*

11

at 380 (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005)); *cf. Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998) ("[C]ourts are well-advised to separate 'qualified immunity' analysis from 'merits' analysis whenever practicable.  In some circumstances, however, these inquiries overlap. . . . [D]iscerning whether a particular [official's] behavior passes the context-specific test of objective legal reasonableness to some extent collapses the separate 'qualified immunity' and 'merits' inquiries into a single analytical unit.") Here, Harris alleges specifically:

> Attorney General Foti, through State statute, was provided with policy-making authority for regulating the conduct of the ICAC Task Force officers and their supervisors, and he was thus the maker of policies regarding a lack of training and supervision in accordance with which the conduct described caused injury to the Plaintiff.

(Rec. Doc. 1, ¶36).  The Court is unsure whether Harris is asserting that this alleged failure to train or supervise led to his false arrest and the deprivation of his right to counsel.  If Harris is asserting this, then this Court is unsure *how* this claimed failure to train or supervise allegedly led to his false arrest and the deprivation of his right to counsel.  However, the Court will allow Harris to amend his Complaint to make specific factual allegations relative to these issues, including allegations sufficient to withstand the test in the *Mesa* case [discussed infra].  Accordingly, Defendants' motion to dismiss this claim is denied, and Harris is granted 15 days to amend his Complaint.  The Court notes that Harris' failure to clarify his allegations relative to this claim may result in its dismissal.

> **F.     Harris' State Law Claims Against the Attorney General, in His Individual Capacity, for Monetary Relief**

Harris has sued the Attorney General, in his individual capacity, under state law for false arrest, false imprisonment, and malicious prosecution.  (Rec. Doc. 1, ¶30).  "Once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 ( 2007) (citations omitted).  In the present case, Harris does not allege that the Attorney General personally participated in Plaintiff's arrest, his imprisonment, or his prosecution.  Accordingly, as Harris has failed to plead facts which are consistent with his allegations of false arrest, false imprisonment, and malicious prosecution against the Attorney General, in his personal capacity, Defendants' motion to dismiss these claims is granted.

Harris also seems to have sued the Attorney General for defamation.  (See Rec. Doc. 1, ¶26).  A viable defamation claim requires the plaintiff prove four elements:  "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So. 2d 552, 559 (citation omitted).  Harris has asserted in his Complaint that he was arrested.  Harris claims that the Attorney General "castigated the accused while congratulating the defendant officers [for the ICAC Task Force arrests]."  (See Rec. Doc. 1, ¶26).  What Harris fails to allege is that anything said about him was untrue.  Notably, Harris was arrested; thus, this Court finds nothing false or defamatory about the Attorney General's public statement(s) regarding Harris' arrest.  Because he has not alleged any set of facts that support the existence of a false or defamatory statement, Defendants' motion to dismiss Plaintiff's state law defamation claim against Attorney General Foti, in his personal capacity, is granted.

### III.   CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the **Motion to Dismiss Defendants**

**"Louisiana Attorney General's Internet Crimes Against Children Task Force" and Attorney General Charles C. Foti, Jr.  (Rec. Doc. 22)** is **GRANTED IN PART and DENIED IN PART.**

   **IT IS FURTHER ORDERED** that Harris is granted 15 days to amend his Complaint to further explain whether and how the Attorney General's alleged failure to train or supervise led to his false arrest and the deprivation of his right to counsel.

   New Orleans, Louisiana, this 30th day of September, 2008.

                                              _____
                                              **KURT D. ENGELHARDT**
                                              **UNITED STATES DISTRICT JUDGE**